## LEE v. ELECTRIC TYPOGRAPHIC CO.

(Circuit Court, S. D. New York. May 28, 1895.)

1. SPECIFIC PERFORMANCE—TENDER OF CONSIDERATION.

Complainant's bill alleged that he held a license under certain patents owned by defendant, and which defendant wished to dispose of; that he agreed to aid defendant in disposing of the patents, to surrender his license, and to assign certain patents owned by him, in consideration of one-fifth of any stock or other things of value received by defendant on the sale; that by his aid a sale had been made, upon which defendant had received a large amount of stock; that he had tendered an assignment of his patent and a surrender of his license; and that he was ready to transfer the patent, but did not specifically offer to surrender the license. *Held,* that a decree for specific performance might, nevertheless, be made, conditioned upon complainant's surrender of the license.

2. EQUITY—ENFORCING CLAIM TO STOCK.

It further appeared from the bill that the defendant's patents had been sold, with complainant's concurrence, free from the license, which might accordingly have become merged, by estoppel. *Held,* that the bill, regarded as one to enforce complainant's interest in the proceeds, arising from his furnishing part of the thing sold, was not demurrable.

This was a suit by Homer Lee against the Electric Typographic Company for the specific performance of a contract. Defendant demurred to the bill.

Rush Taggart, for plaintiff.

Frederick Geller, for defendant.

WHEELER, District Judge. The bill alleges, in substance, that the defendant had patents on printers' composing, justifying, and stereotyping machines, which the defendant wanted to dispose of to another company, and under which the plaintiff had an exclusive right to make, use, and let for use, machines in the counties of New York, Westchester, Kings, Queens, Richmond, and Suffolk, in the state of New York; that the plaintiff had an agreement with one Graham for a patent for a similar device; whereupon the plaintiff and defendant agreed that, in consideration of the surrender of the license, the assignment of the patent of Graham, and of services to be rendered by the plaintiff in helping to effect such sale, the defendant would deliver and pay over to the plaintiff one-fifth of any stocks or other things of value which the defendant should receive in consideration of the sale; that the plaintiff spent much time in assisting to make, and with his aid was made, such sale to the Rogers Typographic Company, an assignee of the other company, for $445,000 of the capital stock of the Rogers Typographic Company delivered to the defendant; that the plaintiff afterwards tendered an assignment of the Graham patent, and of the

license, and demanded $80,000, one-fifth of $400,000 of the stock received, waiving the balance of $45,000, which the defendant refused; that the plaintiff still owns and holds the Graham patent and the license, and is ready to transfer the patent, on delivery of $80,000 of the stock, which has no recognized market value, and which he had reason to apprehend may be distributed among the stockholders of the defendant. The defendant demurs to the bill, and the principal cause of demurrer relied upon is the failure to aver readiness to surrender the license, as well as to transfer the patent.

This demurrer has been argued principally as if the bill was merely for specific performance, and the prayer is framed in that aspect; and unquestionably, as is insisted for the defendant, a plaintiff in such a bill, where the performance is sought by force of a mere contract, and things are to be done by each, must, by his bill, show himself able and ready to perform on his part. Relief in equity is, however, very flexible; and a decree could readily be made, as is frequent, that the defendant should do certain things, like making conveyances or transfers of property, upon the doing of other things by the plaintiff necessary to the protection of the defendant's rights. And in this case a decree for the delivery of the stock claimed to the plaintiff could readily be made conditional upon the transfer of the Graham patent and surrender of the license, whereby the defendant's rights concerning them would be, protected; and the bringing of the bill, with allegations that the defendant has once tendered the license, and has it now, may so have brought the license within the reach of the court, as a part of the case, as to authorize the court to decree that, as well as the Graham patent, to the defendant, and to entitle the defendant to have it so decreed, as a part of a decree for delivery of the stock.

But the patents are understood to have been transferred to the Rogers Typographic Company as free from the license, and as this was done in part by the plaintiff's aid, and necessarily with his concurrence, his rights as licensee may have become merged in the title to the patents, and passed with it by estoppel; so that he furnished a part of the thing sold, and therefore has an interest in the agreed share of the price paid. And, by the terms of the contract as set forth, he would have a joint interest in the proceeds of the sale, having reference to the proportion agreed, for what he did and yielded in procuring it. In this aspect the bill is brought rather upon the plaintiff's right to the stock arising out of the transaction than for a conveyance of the defendant's title in specific performance of the agreement. In a bill to so ascertain and enforce his own interest in the stock, less particularity about averring readiness in respect to conveying the license might be sufficient. The allegations of the bill seem rather meager, but, on the whole, they appear to be sufficient to support a decree if taken pro confesso, and therefore sufficient to require an answer.

Demurrer overruled, and defendant to answer by the July rule